## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

SEBASTIAN GORKA;
6337 Georgetown Pike, McLean, Virginia 22101,

*Plaintiff*,

v.

BENNIE G. THOMPSON, in his official capacity
as Chairman of the House Select Committee to
Investigate the January 6 Attack on the United
States Capitol; Rayburn House Office Building,
2466, Washington, DC 20515

JOHN WOOD, in his official capacity as
Investigative Counsel for the Minority Members of
the House Select Committee to Investigate the
January 6 Attack on the United States Capitol;
1540A Longworth House Office Building
Washington, D.C. 20515

TIMOTHY J. HEAPHY, in his official capacity as
Chief Investigative Counsel for the House Select
Committee to Investigate the January 6 Attack on
the United States Capitol; 1540A Longworth House
Office Building Washington, D.C. 20515

SELECT COMMITTEE TO INVESTIGATE THE
JANUARY 6TH ATTACK ON THE UNITED
STATES CAPITOL; 1540A Longworth House
Office Building, Washington, D.C. 20515

VERIZON COMMUNICATIONS, INC.; 1095
Avenue of the Americas, New York, NY 10036

*Defendants*.

## **INTRODUCTION**

1.      Dr. Sebastian Gorka comes to this Court as a private citizen seeking relief from his political adversaries' abuse of Congressional power to intimidate and stifle his political speech. Under the cover of its investigation into the January 6, 2021 attack on the Capitol, the Select Committee abused its power by unlawfully subpoenaing a cell phone service provider to produce the call records of Dr. Gorka, the host of a political radio show.

2.      Unlike other targets, the Committee has not asked Dr. Gorka to answer any questions or to produce any documents, nor does he have any information to provide.

3.      Dr. Gorka was not a member or leader of any organization that sponsored any events on January 6, and was not present at the Capitol on that day. Although invited to speak at an event at the Supreme Court that day, his speech was cancelled, and therefore, he only observed the speeches at the Ellipse as one spectator among many and left. He has committed no crime, and he has done nothing, and has no information, that could provide the basis for new laws.

4.      Accordingly, there is absolutely **no valid *legislative purpose*** to be served by obtaining and viewing his **private phone records**: it is a purely partisan fishing expedition.

5.      As illustrated by the Select Committee going directly to Mr. Gorka's service provider without first asking him for the information directly, the Committee has **no evidence** that Dr. Gorka was involved in the attack on the Capitol. Attempting to exploit a presumed judicial reluctance to interfere with its investigation of the January 6 attack, the Committee's invasion of Mr. Gorka's privacy amounts to targeted retribution for his disfavored political speech and political associations.

6. The Supreme Court has indeed held that courts must be mindful of the separation of powers and the immunity conferred upon members of Congress in the Speech and Debate Clause, which typically operate together to shield routine Congressional activity, including legislative investigations, from judicial review. However, there is a limit to the courts' deference and the Court has identified clear boundaries beyond which Congress's abuse of citizen rights become justiciable.

7. The Select Committee's aimless rifling through the communications records of an adverse political journalist whom it knows had no role in the events it claims to be investigating epitomizes an investigation run amok. The toxic forces rending this country apart will only be strengthened, and the goal of more tranquil times will be more elusive, if any party holding a majority of seats in the House of Representatives can hunt down and persecute citizens, including journalists, because of their political sympathies and speech in an effort to silence that speech.

8. In addition to violating Dr. Gorka's rights, the subpoena is also defective because the Select Committee is not properly constituted, the subpoena was not issued in conformity with the Select Committee's authorizing resolution, Dr. Gorka did not provide the legally required authorization for Verizon to provide the information to Congress, the information sought by the subpoena requires a warrant supported by probable cause, the subpoena violates statutory protections for government use of private telecommunications information, and Verizon is being subject to competing legal obligations.

9. Accordingly, the subpoena issued to Verizon seeking to obtain Dr. Gorka's personal telecommunications records is invalid and unenforceable, and should be quashed.

## **PARTIES**

10.    **Plaintiff SEBASTIAN GORKA** ("Dr. Gorka") is a radio show host and political commentator.

11.    **Defendant BENNIE G. THOMPSON** ("Chairman Thompson") is the U.S. Representative for Mississippi's 2nd District and the Chairman of the House Select Committee to Investigate the January 6 Attack on the United States Capitol. Chairman Thompson signed the subpoena in question, and is being sued in his official capacity.

12.    **Defendant TIMOTHY J. HEAPHY** ("Heaphy") is the Chief Investigative Counsel for the House Select Committee to Investigate the January 6 Attack on the United States Capitol. Upon information and belief, he drafted and served the subpoena in question, and is being sued in his official capacity.

13.    **Defendant JOHN WOOD** ("Wood") is the Chief Counsel to the Minority Members of the house Select Committee to Investigate the January 6 Attack on the United States Capitol. Upon information and belief, he participated in the drafting and service of the subpoena in question, and is being sued in his official capacity.

14.    **Defendant VERIZON, INC.** ("Verizon") is a corporation headquartered in New York City and Incorporated in Delaware. Verizon is listed as a Defendant to ensure that Plaintiff can obtain effective relief. Verizon is susceptible to the jurisdiction of this Court because it conducts substantial business in this district.

15.    **Defendant SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6TH ATTACK ON THE UNITED STATES CAPITOL** ("Select Committee") is a select committee created by House Resolution 503, passed by the U.S. House of Representatives on June 30, 2021.

<u>**JURISDICTION AND VENUE**</u>

4

16.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this cause arises under the Constitution and laws of the United States, including U.S. Const. amends. I, IV; 18 U.S.C. §§ 1039, 2702, 2707; 28 U.S.C. §§ 1367, 2201, 2202.

17.    Venue is proper because Chairman Thompson officially resides in the District. 28 U.S.C. § 1391.

## **BACKGROUND**

18.    On January 6, 2021, a large group of people in Washington, D.C., entered the U.S. Capitol, breached security, and disrupted the counting of Electoral College votes until order was restored. The U.S. Department of Justice has arrested more than 500 individuals in connection with the activities on January 6th.

19.    On June 28, 2021, Speaker Pelosi introduced H. Res. 503, "Establishing the Select Committee to Investigate the January 6th Attack on the United States Capitol." Two days later, the House passed H. Res. 503 on a near party-line vote of 222 yeas and 190 nays. Only two Republicans, Rep. Liz Cheney of Wyoming and Rep. Adam Kinzinger of Illinois, voted in favor of H. Res. 503.

20.    H. Res. 503 instructs the Speaker of the House to appoint thirteen members to the Select Committee, only five of which "shall be appointed after consultation with the minority leader."

21.    Speaker Pelosi appointed Chairman Thompson to serve as Chair of the Select Committee and appointed six additional Democrat members: Rep. Zoe Lofgren of California, Rep. Adam Schiff of California, Rep. Pete Aguilar of California, Rep. Stephanie Murphy of Florida, Rep. Jamie Raskin of Maryland, and Rep. Elaine Luria of Virginia. She also appointed

Republican Rep. Liz Cheney of Wyoming without any designation of position. 167 Cong. Rec. H3597 (2021).

22.    House Minority Leader Kevin McCarthy recommended five Republican members to serve on the Select Committee, consistent with H. Res. 503: Rep. Jim Banks of Indiana, to serve as Ranking Member, and Rep. Rodney Davis of Illinois, Rep. Jim Jordan of Ohio, Rep. Kelly Armstrong of North Dakota, and Rep. Troy Nehls of Texas, to serve as additional minority members.

23.    Speaker Pelosi did not appoint Rep. Banks to serve as Ranking Member, nor did she appoint any other of Minority Leader McCarthy's recommended minority members. In a public statement, she acknowledged that her refusal to appoint the members recommended by the Minority Leader was an "unprecedented decision." Nancy Pelosi, Speaker, U.S. House of Representatives, Pelosi Statement on Republican Recommendations to Serve on the Select Committee to Investigate the January 6th Attack on the U.S. Capitol (July 21, 2021), https://www.speaker.gov/newsroom/ 72121-2.

24.    Instead, Speaker Pelosi appointed Rep. Adam Kinzinger and Rep. Liz Cheney—the only two Republicans who voted in favor of H. Res. 503—and left four vacancies. See 167 Cong. Rec. H3885 (2021).

25.    Without reference to any authority, on September 2, 2021, Chairman Bennie Thompson announced in a press release that "he has named Representative Liz Cheney (R-WY) to serve as the Vice Chair of the Select Committee." See Press Release, Bennie Thompson, Chairman, Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, Chairman Thompson Announces Representative Cheney as Select Committee Vice Chair (Sept. 2, 2021), https://january6th.house.gov/news/press-releases/chairman-thompson-announces-

representativecheney-select-committee-vice-chair. H. Res. 503 does not mention a vice chair, much less authorize the chair to appoint a vice chair. See generally H. Res. 503, 117th Cong. (2021).

26.      The official letterhead of the Select Committee indicates that Bennie Thompson is "Chairman" and lists the other members, including Cheney and Kinzinger, without designation. The Select Committee's website provides a list of its members, including Thompson as Chairman, but no other members receive designation. *See* Membership, Select Comm. to Investigate the Jan. 6 Attack on the U.S. Capitol, https://january6th.house.gov/about/ membership (last visited Jan. 4, 2022).

27.      H. Res. 503 provides that "[t]he Select Committee may not hold a markup of legislation."

28.      H. Res. 503 establishes three "functions" of the Select Committee: (1) to "investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol"; (2) to "identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol"; and (3) to "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures described in subsection (c) as it may deem necessary." Subsection (c) of Section 4 describes three categories of "corrective measures": "changes in law, policy, procedures, rules, or regulations that could be taken" (1) "to prevent future acts of violence, domestic terrorism, and domestic violent extremism, including acts targeted at American democratic institutions"; (2) "to improve the security posture of the United States Capitol Complex while preserving accessibility of the Capitol Complex for all Americans"; and (3) "to strengthen the security and resilience of the

United States and American democratic institutions against violence, domestic terrorism, and domestic violent extremism."

29.     H. Res. 503 provides that "[t]he chair of the Select Committee, upon consultation with the ranking minority member, may order the taking of depositions, including pursuant to subpoena, by a Member or counsel of the Select Committee, in the same manner as a standing committee pursuant to section 3(b)(1) of House Resolution 8, One Hundred Seventeenth Congress."

30.     The Select Committee has issued a wide range of subpoenas for documents and the testimony of other witnesses, including individuals in the Trump administration and organizers of events on January 6.

31.     On December 15, 2021, the Select Committee issued a subpoena to Verizon for the production of records associated with Dr. Gorka's phone number, to be produced by December 29, 2021. *See* Ex. B.

32.     On December 17, 2021, Verizon sent a letter to Dr. Gorka advising him that it would comply with the subpoena "unless Verizon receive[d] a court document from [Dr. Gorka] challenging the subpoena by January 5, 2022." *See* Ex. C.

**I.     Challenges to Congressional Subpoenas**

33.     When a third party's compliance with a congressional subpoena threatens to expose an individual's personal information, that individual may seek an "injunction or declaratory judgment" in federal court to block the subpoena's "issuance, service on, or enforcement against" the "third party." *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1259 (D.C. Cir. 1973), *subsequent merits decision rev'd on other grounds*, 421 U.S. 491.

34.     When considering motions to quash Congressional subpoenas, courts must consider "whether a legitimate legislative purpose is present," *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 (1975); whether the Committee has issued the subpoena in compliance with House Rules and its authorizing resolution, *Yellin v. United States*, 374 U.S. 109, 114 (1963); whether the subpoena infringes upon constitutional rights, *Watkins v. United States*, 354 U.S. 178, 188, 198 (1957); and whether the subpoena seeks privileged information, *see e.g.*, Congressional Research Service No. 7-5700, *Investigative Oversight: An Introduction to the Law, Practice, and Procedure of Constitutional Inquiry*, pp. 32-36 (April 7, 1995) (attorney-client privilege).

## II.     The Subpoena Does Not Serve a Legitimate Legislative Purpose

### A.     The Committee's Law Enforcement Purpose

35.     Through the statements and conduct of Select Committee members and others, it is apparent that a predominant purpose of the Committee is criminal investigation and law enforcement, not merely legislative fact-finding. For instance:

- On September 24, 2021, Representative Raskin, a member of the Committee, publicly stated that the Committee was "perfectly willing to turn over evidence of criminal acts to the Department of Justice."

- Chairman Thomas and Vice-Chair Cheney have repeatedly made public statements that the Committee's aim is to ensure "those responsible are held accountable." The Law Enforcement Experience on January 6th: Hearing Before the H. Select Committee to Investigate the January 6th Attack on the United States Capitol, 117th Cong. (2021) Statement of Elizabeth Cheney, Vice Chair); Press Release, Thompson & Cheney Statement on Pentagon Officials' Reported Actions After January 6th (Sept. 16, 2021); Press Release, Thompson Statement on Cooperation of Witnesses (Oct. 14, 2021).

- In addition, Chairman Thompson has publicly stated that a purpose of the Committee is to "determine guilt or innocence."

- Reportedly, "committee members are looking into whether a range of crimes were committed" and it "has begun issuing subpoenas for bank records." Luke Broadwater and Alan Feuer, *In the Capitol's Shadow, the Jan. 6 Panel Quietly Ramps Up Its Inquiry*, NY TIMES, Jan. 4, 2022, https://www.nytimes.com/2022/01/04/us/politics/capitol-riot-panel.html.

### B. The Subpoena is the Product of a Politically Motivated Fishing Expedition

36. Members of the Committee – including Representatives Zoe Lofgren, Jamie Raskin, and Adam Schiff – previously served as members of the House impeachment teams for one of the two impeachments of former President Trump.

37. Dr. Gorka is a prominent political commentator whose outspoken support of former President Trump is well-known.

38. Despite there being no evidence that Dr. Gorka was involved in any way with the January 6, 2021 attack on the Capitol, the Committee's subpoena nonetheless attempts to invade Dr. Gorka's privacy on nothing more than political antipathy toward Dr. Gorka and his political views.

### III. The Committee's Composition Violates House Rules and its Own Authorizing Resolution Provisions on Minority Membership

39. Under H.Res. 503 – the Select Committee's authorizing resolution – "5 [of the 13 members] must be appointed after consultation with the minority leader." Ex. A.

40. After Minority Leader Kevin McCarthy recommended Representatives Jim Banks, Jim Jordan, Rodney Davis, Kelly Armstrong, and Troy Nehls to serve as Republican members of the Committee on July 19, 2021, Speaker of the House Nancy Pelosi refused to accept the

appointments of Jim Banks and Jim Jordan – an action that Speaker Pelosi herself described as "unprecedented."

41.   Thereafter, Minority Leader McCarthy declined to appoint any members of the Select Committee.

42.   On her own initiative, Speaker Pelosi instead appointed Republican Representatives Liz Cheney and Adam Kinzinger, two members of the Republican caucus renowned for their public alignment with the majority party on issues central to the Select Committee's purpose.

43.   Despite the Select Committee's authorizing resolution providing that the Speaker "shall" appoint 13 members, Speaker Pelosi appointed only 9.

44.   Under House GOP Rule 14(a)(1), the Republican Steering Committee nominates ranking minority members to committees of the House, who are then voted on by the full Republican House Conference.

45.   Neither Representative Cheney nor Representative Kinzinger were nominated by the Republican Steering Committee, nor voted upon by the Republican House Conference, to serve as ranking minority member on the Select Committee.

46.   There is no ranking minority member on the Select Committee.

47.   House Rules require that the ranking minority member be consulted with before depositions, designate counsel for deponents, and receive equal time during deposition questioning. House Committee on Rules, "Regulations for the Use of Deposition Authority."

48.   House Rules also provide that minority members may call witnesses. House Rule XI.2(j)(1).

49.   Because of the multitude of aforementioned violations, the Select Committee is constituted in violation of House Rules and its own authorizing resolution.

**IV.     The Subpoena to Verizon Violates Telecommunication and Privacy Laws**

50.      In the "findings" section of the Telephone Records and Privacy Protection Act of 2006, Congress noted that "the unauthorized disclosure of telephone records . . . assaults individual privacy." Therefore, the disclosure of such information "without prior authorization from the customer to whom such confidential phone records information relates" is expressly prohibited. 18 U.S.C. § 1039(b), (c); *see also* 47 U.S.C. § 222(c)(1). While specific exceptions, such as disclosure to law enforcement and emergency service provides apply, 47 U.S.C. § 222(d)(4)(A), those exceptions do not apply to the subpoena at issue here.

51.      Under the Stored Communications Act, an entity who provides electronic communications and remote computing services, such as Verizon, may not knowingly divulge "a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)) to any governmental entity." 18 U.S.C. § 2702(a)(3).

52.      While certain "government entities" may require disclosure of such information, they may only do so if they obtain a warrant, 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A); the consent of the subscriber whose records are sought by the subpoena, § 2703(c)(1)(C); or alternatively, if they provide prior notice to the subscriber, § 2703(b)(1)(B). In the case of Dr. Gorka, none of these statutory safeguards were followed.

## <u>COUNT I</u>

### <u>The Subpoena Does Not Serve a Legitimate Legislative Purpose</u>

53.      Dr. Gorka restates the foregoing paragraphs as if set forth fully herein.

54.      Congress's investigative powers are ancillary to its *legislative* authority, and are limited to that extent. *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020).

55.     The Constitution does not grant Congress "a general power to inquire into private affairs." *Eastland*, 421 U.S. at 504 n.15. Thus, "[t]he subject of any [congressional] inquiry always must be one on which legislation could be had." *Id.*; *see also Quinn v. United States*, 349 U.S. 155, 161 (1955) ("[T]he power to investigate" does not "extend to an area in which Congress is forbidden to legislate."); *see generally*, *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031-32 (2020). "Investigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible" . . . "There is no congressional power to expose for the sake of exposure." *Watkins*, 354 U.S. at 187, 200.

56.     As congressional subpoenas must serve a legitimate legislative purpose, they cannot be used to exercise "any of the powers of law enforcement . . . assigned under our Constitution to the Executive and the Judiciary." *Quinn*, 349 U.S. at 161; *see also Kilbourn v. Thompson*, 103 U.S. 168, 190-91 (1880) (To ensure the "successful working" of the separation of powers provided by the Constitution, "it is [] essential . . . [that] any one of these branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other.").

57.     As previously stated, there is no evidence Dr. Gorka was associated or involved, in any manner, with the January 6, 2021 attack on the Capitol.

58.     Despite this, the Committee demands all communications for Dr. Gorka's phone records, text messages, and contact lists for the period of November 1, 2020, to January 31, 2021. This is a quintessential fishing expedition targeting Dr. Gorka for his political views and associations, divorced from a legitimate fact-finding process of a legislative undertaking.

59.     The Committee's actions and statements clearly indicate that it is bent on misusing the investigatory power of Congress to have its targets criminally prosecuted, aided by a cooperating

Department of Justice to whom it will provide the materials it obtains.  This is not merely a by-product of the Committee's legislative purpose, it *is* the Committee's purpose. That the Department of Justice is actively prosecuting individuals and organizations for the same activities that the Committee is investigating underscores that the Committee is playing the role of prosecutor, beyond the lawful legislative limits of its constitutional authority and without any of the due process and other constraints the Constitution places on the executive branch.

60.     The Committee is not even permitted to mark up legislation.

61.     Because the Committee's subpoena to Verizon lacks "a legitimate legislative purpose" and threatens to expose Dr. Gorka's confidential information, this Court should exercise its power to declare it invalid and enjoin its enforcement. *Eastland*, 421 U.S. at 501 n.14.

## COUNT II

### The Committee is Improperly Constituted

62.     Dr. Gorka restates the foregoing paragraphs as if set forth fully herein.

63.     Congress' failure to act in accordance with its own rules is judicially cognizable. *Yellin v. United States*, 374 U.S. 109, 114 (1963).

64.     For a committee's asserted legislative purpose to be considered legitimate, as required by the Constitution's separation of powers, it further "must conform strictly" to its authorizing resolution and otherwise comply with House Rules. *Exxon Corp. v. FTC*, 589 F.2d 582, 592 (D.C. Cir. 1978); *Watkins*, 354 U.S. at 200. In cases where a committee's investigation is "novel" or "expansive," courts construe its jurisdiction "narrowly." *Tobin v. United States*, 306 F.2d 270, 275 (D.C. Cir. 1962).

65.    The Select Committee has exceeded its authorizing resolution by seeking information on Dr. Gorka that does not have a reasonable relation to the Committee's specific legislative purpose. *See Eastland*, 421 U.S. at 501.

66.    Further, the composition of the Select Committee violates its authorizing resolution, H.Res. 503, which requires that "5 [of the 13 members] . . . be appointed after consultation with the minority leader." Ex. A.

67.    The composition of the Select Committee also violates House Rules, which require that the Republican Steering Committee nominate a ranking minority member of the Committee, who is then voted on by the full Republican House Conference.

68.    Without a ranking minority member, there is no one on the Select Committee to perform the essential adversarial functions required by House Rules, such as consulting with the Committee before depositions, designating counsel for deponents, receiving equal time during deposition questioning, and calling witnesses.

69.    Because the Select Committee is constituted and operating in violation of House Rules, it cannot validly exercise its subpoena authority, and therefore, its subpoena to Verizon should be quashed.

## COUNT III

### Violation of Telecommunication Privacy Laws

70.    Dr. Gorka restates the foregoing paragraphs as if set forth fully herein.

71.    With the exception of certain law enforcement functions not applicable here (and indeed, which the Select Committee is prohibited from undertaking), Verizon's release of Dr. Gorka's telephone records without his prior authorization is prohibited by the Telephone Records and Privacy Protection Act of 2006. 18 U.S.C. § 1039(b), (c); *see also* 47 U.S.C. § 222(c)(1).

72.    Moreover, the Stored Communications Act prevents Verizon from divulging Dr. Gorka's call records to the Committee because the Committee has failed to obtain a warrant or the consent of Dr. Gorka, and it has failed to provide Dr. Gorka with the proper notice as required by statute. 18 U.S.C. § 2703.

73.    Ultimately, the subpoena presents Verizon with an unfair dilemma: ignore the subpoena and risk contempt of Congress, or comply with the subpoena and risk liability if the subpoena is invalid or unenforceable.

74.    The D.C. Circuit has held that the recipient of a subpoena should not be subjected to conflicting commands while the legitimacy of the subpoena is being litigated. *See United States v. Deloitte LLP*, 610 F.3d 129, 142 (D.C. Cir. 2010).

75.    Therefore, this Court should stay enforcement of the Committee's subpoena of Verizon pending resolutions of whether the procedure the Committee followed in issuing the Verizon subpoena complied with the aforementioned requirements of federal telecommunications and privacy law.

## COUNT IV

## Violation of First Amendment

76.    Dr. Gorka restates the foregoing paragraphs as if set forth fully herein.

77.    The Committee's subpoena to Verizon seeks call logs and text message logs, the disclosure of which would infringe on the First Amendment speech, association, assembly and petition rights not only of Dr. Gorka but of those with whom he associated. *See, e.g., NAACP v. Alabama*, 357 U.S. 449, 462 (1958).

78.    Further, as a member of the political press editorializing current affairs and an outspoken individual citizen, the subpoena of Mr. Gorka's phone records also violates the

freedom of the press and chills his First Amendment rights to freedom of speech. *See*, *e.g.*, *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 776 (1978) ("The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without . . . fear of subsequent punishment.") (quoting *Thornhill v. State of Alabama*, 310 U.S. 88, 101 (1940)) (internal quotations omitted)).

79.     Chairman Thompson's subpoena of Verizon purports to identify Dr. Gorka's personal cell phone number and requests the data associated with it.

80.     Dr. Gorka used his personal phone to engage in protected advocacy and other speech, including privileged speech with attorneys and his spouse.

81.     Dr. Gorka also used his personal phone to engage in private conversations with friends and family.

82.     All of these associational and expressive activities are protected by the First Amendment. *See Buckley v. Valeo*, 424 U.S. 1, 64 (1976); *Black Panther Party v. Smith*, 661 F.2d 1243, 1267 (D.C. Cir. 1981); *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Fed. Election Comm'n*, 333 F.3d 168, 179 (D.C. Cir. 2003).

83.     Even assuming *arguendo* that the Select Committee had a valid reason to seek protected information, the Committee has put in place no safeguards to protect Dr. Gorka's rights. It provided Dr. Gorka with no notice of the subpoena and has provided him with no opportunity to assert claims of privilege or other legal protections over the demanded information. It also has no provisions for a taint team or analogous filter for privileged information, such as may be protected by the attorney-client privilege.

84.     The Verizon subpoena is also a clear effort to chill the speech of the Committee Member's political adversaries.

85.     The body that issued this subpoena is composed of 9 members, 7 of whom belong to the political party that opposed the President Dr. Gorka was known to support, and the other two of whom are well-known intra-party opponents of that President.

86.     Allowing an entirely partisan select committee of Congress to subpoena the personal cell phone data of political opponents would work a massive chilling of the associational and free speech rights of citizens and the press.

87.     The subpoena is therefore invalid and unenforceable, and should be quashed

## COUNT V

## Violation of Fourth Amendment

88.     Dr. Gorka restates the foregoing paragraphs as if set forth fully herein.

89.     The Fourth Amendment enumerates the right of private individuals to be free from unreasonable search and seizure by the government into their persons, houses, papers, and effects. It also protects a person's reasonable expectations of privacy. *Katz v. United States*, 389 U.S. 347, 351 (1967).

90.     Plaintiff has a reasonable expectation of privacy in his personal cell phone data.

91.     The fact that a third party at least temporarily stores a person's cell phone data does not alter his expectation or its reasonableness. *Carpenter v. United States*, 138 S. Ct. 2206 (2018).

92.     The Fourth Amendment restricts the ability of the Select Committee to issue sweeping subpoenas untethered from any valid legislative purpose. *See Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 196 (1946).

93.     Chairman Thompson's subpoena to Verizon instructs Verizon to produce subscriber information and cell phone data associated with a phone number attributed to Dr. Gorka.

94.     The subscriber information requested includes subscriber names and contact information, authorized users, time of service provided, account changes, associated IP addresses, and other metadata.

95.     The cell phone data requested includes all calls, text messages, and other records of communications associated with that phone number.

96.     The requested data covers three full months: November 1, 2020 through January 31, 2021.

97.     The subpoena contains no limitations seeking to preserve applicable privileges or prevent violations of constitutional rights.

98.     The subpoena also makes the ambiguous demand for "data-connection detail records" and "call . . . records."

99.     Should this ambiguous wording be interpreted to include cell site location data, it would encompass information that even law enforcement officers cannot access without a valid warrant. *Carpenter*, 138 S. Ct. at 2217. Even if Verizon does not adopt this interpretation, the Committee could deem Verizon's response inadequate and assert such an interpretation nonetheless.

100.    Chairman Thompson's subpoena to Verizon is so broad and indefinite as to exceed the lawfully authorized purpose of the Select Committee. *See McPhaul v. United States*, 364 U.S. 372, 381 (1960).

101.    A congressional subpoena must be reasonable. An all-encompassing subpoena for personal, non-official documents falls outside the scope of Congress' legitimate legislative power. *See Mazars*, 140 S. Ct. at 2040 (2020).

102.     For the Select Committee to subpoena Verizon for all of Plaintiff's personal cell phone data over the course of three months is entirely unreasonable. Such a request is so broad both temporally and with respect to the collected data, that the Select Committee exceeds any lawfully authorized purpose.

103.     Because it is made without an iota of evidence that the information requested will serve a legitimate legislative purpose, the Committee's subpoena to Verizon is equivalent to a "general warrant" in violation of Dr. Gorka's Fourth Amendment rights.

104.     If the government, including the Select Committee, seeks to obtain documents or data protected by the Fourth Amendment, it must be obtained by consent or otherwise authorized by law. Plaintiff has not provided his consent for Verizon to produce his cell phone data to the Select Committee.

105.     As the subpoena in question exceeds the lawfully authorized purpose of the Select Committee, full compliance with such subpoenas would violate Plaintiffs' Fourth Amendment protection against unlawful search and seizure. The subpoenas are thus invalid and unenforceable.

## PRAYER FOR RELIEF

Plaintiff requests that this Court:

a.      Declare that the information sought by the subpoena at issue is in furtherance of law enforcement rather than legislative purposes, and that the subpoena is therefore invalid and unenforceable.

b.      Declare that the Select Committee is constituted in violation of House Rules, and that any actions taken by the Committee are therefore ultra vires.

c.      Declare that the information sought by the subpoena violates the First Amendment rights of the Plaintiff to freedom of speech, association, and the press, and those with whom he has been associating, and that the subpoena is therefore invalid and unenforceable.

d.      Declare that the information sought by the subpoena violates the Fourth Amendment right to be free from unreasonable searches and seizures, and that the subpoena is therefore invalid and unenforceable.

e.      Issue a temporary restraining order and/or preliminary injunction, followed by a permanent injunction, enjoining Verizon from complying with Chairman Thompson's subpoena.

f.      Award to Plaintiff his reasonable costs and expenses, including attorneys' fees.

g.      Grant any other preliminary and permanent relief that the Court deems just, proper, and equitable, and to which Plaintiff is entitled.

Dated: January 5, 2022

Respectfully submitted,

*/s/ David A. Warrington*
David A. Warrington, Esq. (D.C. Bar # 1616846)
**Dhillon Law Group, Inc.**
2000 Duke Street, Suite 300 Alexandria, Virginia 22314 571-400-2120
dwarrington@dhillonlaw.com

*/s/ Michael A. Columbo*
Michael A. Columbo, Esq. (D.C. Bar # 476738)
**Dhillon Law Group Inc.**
177 Post Street, Suite 700 San Francisco, California 94108 415-433-1700
mcolumbo@dhillonlaw.com

Counsel for Plaintiff Sebastian Gorka